In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 17-3196

SHAMECA S. ROBERTSON, on behalf of herself and all others similarly situated,

*Plaintiff-Appellant*,

*v.*

ALLIED SOLUTIONS, LLC,

*Defendant-Appellee*.

---

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:15-cv-1364-WTL-DML — **William T. Lawrence**, *Judge*.

---

ARGUED FEBRUARY 20, 2018 — DECIDED AUGUST 29, 2018

---

Before WOOD, *Chief Judge*, and EASTERBROOK and BARRETT, *Circuit Judges*.

WOOD, *Chief Judge*. Employers rarely extend job offers without first checking the applicant's background and references. They are free to conduct such checks, but they must follow certain rules. Many of those rules come from the Fair Credit Reporting Act (FCRA or Act), 15 U.S.C. §§ 1681–1681x. Shameca Robertson alleges that Allied Solutions, LLC

("Allied") disregarded several of the Act's requirements when she applied for a position with the company. This action, filed on behalf of herself and two proposed classes, seeks to hold Allied accountable for those missteps. The parties tentatively had agreed to settle Robertson's two class claims when the district court on its own initiative raised some concerns about her standing to sue under Article III. It asked for briefing on that issue and then dismissed the entire action for want of jurisdiction.

At this juncture we accept Robertson's allegations, but we still must examine whether Allied's alleged violations of the Act caused her any concrete injury. Because the answer is in part "yes," we reverse the dismissal for lack of jurisdiction of one of Robertson's claims and remand for further proceedings. The district court's dismissal of the other claim was proper, because its authority to adjudicate must exist before it can resolve the case, even if that resolution is nothing more than a fairness hearing under Federal Rule of Civil Procedure 23(e), followed by approval of a settlement.

**I**

Robertson applied for a position with Allied. It offered her the job, but it ran a background check before she reported to work. Ordinary background checks qualify as consumer reports under the FCRA. See 15 U.S.C. § 1681a(d)(1). Allied thus was required to alert Robertson "clear[ly] and conspicuous[ly]" of its intent to obtain the report and to secure her consent. *Id.* § 1681b(b)(2)(A). Those disclosures needed to be in writing and unadorned by any additional information. *Id.* Robertson complains that they were not. Instead, the forms she received were neither clear nor conspicuous, and they included extraneous information. She did not allege,

however, that the added information affected her consent to the check.

Certain "non-conviction information" (the nature of which is immaterial for present purposes) turned up in the course of Robertson's background check. This information prompted Allied to revoke the job offer. A representative from its human resources department passed that word along to Robertson. She alleges that the representative told her only that the offer was being rescinded "because of information in her 'criminal background check' report." An employer that relies in any measure on a background check for an adverse employment decision (including rescinding a job offer, see *id.* § 1681a(k)) must provide the applicant with a copy of the report and a written description of her rights under the FCRA before acting. *Id.* § 1681b(b)(3)(A). Allied provided neither to Robertson.

She responded with this lawsuit. Her complaint includes two claims, each on behalf of a distinct subclass. First, she sued Allied for failing to furnish clear and conspicuous disclosure forms. We call this the notice claim. Second, she sued Allied for taking an adverse employment action based on her background check without first supplying a copy of the report or a written summary of her FCRA rights. This is her adverse-action claim.

After mediation in April 2016, the parties reached a tentative settlement agreement. A month later, the Supreme Court decided *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), in which it emphasized that federal jurisdiction exists (as relevant here) only if the plaintiff has alleged an injury that is both concrete and particular to herself. Neither Allied nor the court responded immediately to *Spokeo*. Several months lat-

er, Robertson filed an unopposed motion under Federal Rule of Civil Procedure 23(e) for preliminary approval of the settlement agreement and for certification of two settlement classes. Instead of acting on the motion, however, the district court raised *Spokeo* on its own and asked the parties first to brief the question whether Robertson had Article III standing. The court then learned that related issues were pending before this court in *Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884 (7th Cir. 2017), and so it delayed ruling. After we ruled in *Groshek* that an injury functionally indistinguishable from the one underpinning Robertson's notice claim was not concrete and did not confer standing, *id.* at 887, the district court ordered Robertson to show cause why her case should not be dismissed for the same reason. In its order, the court rejected as "simply wrong" Robertson's assertion that it could approve the settlement agreement without jurisdiction over the underlying case.

Eventually the district court dismissed the entire case for lack of standing. It held that *Groshek* compelled that result for Robertson's notice claim. With respect to the adverse-action claim, the court ruled that because Robertson had not pleaded facts connecting the lost offer with Allied's failure to turn over a copy of the background report, it too had to be dismissed. Had Robertson pleaded, for example, that the report was inaccurate or that she favorably could explain the report's content, the court indicated that it might have ruled that she sustained an Article III injury. It refused to permit her to amend her complaint because she never indicated what facts she could allege that would support jurisdiction. She now appeals.

**II**

The Constitution confines "the judicial Power" of the federal courts to "Cases" and "Controversies." U.S. CONST. art. III, § 2. Courts police this limit through the standing doctrine, among others. Standing to bring a suit in federal court depends on the plaintiff's having suffered an injury in fact, which she can trace to the defendant's challenged conduct, and which can be redressed by a favorable judicial decision. *Spokeo*, 136 S. Ct. at 1547. The injury requirement is the critical one in the present case. A qualifying injury must be both concrete and particular to the plaintiff. *Id*. at 1548. The only issue here is whether Robertson suffered a concrete injury; she has said enough to support the other requirements for standing at this time.

An Article III injury may exist solely because a defendant infringes a congressionally created right. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 578 (1992). Even though not all statutory violations inflict concrete personal harm, *Spokeo*, 136 S. Ct. at 1549, withholding information when a statute requires its publication—sometimes called an "informational injury"—may do so. See *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 24–25 (1998). An informational injury is concrete if the plaintiff establishes that concealing information impaired her ability to use it for a substantive purpose that the statute envisioned. *Bensman v. U.S. Forest Serv.*, 408 F.3d 945, 952–53 (7th Cir. 2005); see also *Akins*, 524 U.S. at 21–22 (plaintiffs suffered a concrete injury because they wanted to use withheld information to evaluate candidates for public office, which is a substantive reason the Federal Election Campaign Act requires publication); *Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 449 (1989) (plaintiffs suffered a concrete injury be-

cause they wanted to use withheld information to monitor judicial nominees, which is a substantive reason behind the Federal Advisory Committee Act's publication requirement). The concreteness of an injury is also informed by the pedigree of the alleged harm in English and American courts. *Spokeo*, 136 S. Ct. at 1549; *Groshek*, 865 F.3d at 887.

On appeal, Robertson challenges the district court's standing decision only with respect to her adverse-action claim, which arises under section 1681b(b)(3)(A). (We express no opinion on the question whether Robertson would have suffered a concrete injury if she had alleged only that Allied did not tender *written* notice of her rights before taking adverse action. The problem with that argument is that it describes only a procedural injury. Robertson did not indicate how, if the procedures had properly been followed, she might have persuaded Allied to hire her. With or without written notice of her rights, Robertson would not have become an Allied employee.) She characterizes her adverse-action injury as one fitting the informational-injury model. By withholding her background report, she says, Allied limited her ability to review the basis of the adverse employment decision and impeded her opportunity to respond. The ability to respond, she contends, is the substantive purpose for which the Act compels employee disclosure.

We review the legal arguments about Robertson's Article III standing *de novo*. *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 966 (7th Cir. 2016). Before proceeding to the heart of the appeal we must dispense with some preliminary matters. Allied argues that Robertson has waived the injury argument she now advances. This is a baseless position. Robertson advanced this argument in response to the

district court's Order to Show Cause, and so it was properly preserved. Allied also maintains that Robertson's injury theory has been "ad-libbed" on appeal. But it is asking for too much detail. If litigation proceeds, Robertson will have to substantiate her allegations. Yet, "[i]n order to survive dismissal for lack of standing, the plaintiffs' complaint must contain sufficient factual allegations of an injury resulting from the defendants' conduct, accepted as true, to state a claim for relief that is plausible on its face." *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 588 (7th Cir. 2016). Robertson adequately pleaded her adverse-action injury. She alleged that Allied made her an offer, then rescinded it. Between the offer and rescission, Allied ran a background check, but it never gave her a copy of the report it obtained and concededly relied on when it decided not to hire her. Complaints need not delineate every detail of the plaintiff's legal theory. Because Robertson pleaded facts showing a plausible injury, she "receives the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007). In this case, they are.

The FCRA regulates the use of materials such as these background reports. Robertson relies on section 1681b(b)(3)(A) for her adverse-action claim. That subsection (to which we refer as "subpart A") provides:

> [B]efore taking any adverse action based in whole or in part on [a consumer report used for employment purposes], the person intending to take such adverse action shall provide to the consumer to whom the report relates—

(i) a copy of the report; and

(ii) a description in writing of the rights of the consumer under this subchapter … .

As one can see, there is no reference to potential inaccuracies or any other specific reason for the disclosure. This contrasts markedly with the following paragraph, section 1681b(b)(3)(B) ("subpart B"), which creates an exception from subpart A for employers taking an adverse action against an applicant who applies by mail, telephone, or computer for a position regulated by the Secretary of Transportation (*e.g.*, truck drivers). An employer of would-be truck drivers, for example, has no duty to provide a copy of the actual report; it is enough to notify the applicant that an adverse action was based on the report. 15 U.S.C. § 1681b(b)(3)(B)(i)(I). The employer must also notify the applicant that she may "request a free copy of a report and may dispute with the consumer reporting agency the accuracy or completeness of any information in a report." *Id.* § 1681b(b)(3)(B)(i)(IV). Both notifications can be provided up to three business days after the adverse action. *Id.* § 1681b(b)(3)(B)(i).

Only subpart (A) compels disclosure of the report itself, and that provision requires disclosure *prior to* any adverse action. This unique pre-adverse action requirement assures that the applicant will have a chance to review the actual document on which the employer relied, and that she can do so with time to respond to unfavorable information. Unlike subpart (B), which explicitly limits the range of disputes to "accuracy or completeness," subpart (A) contemplates a broad opportunity to respond.

Subparts (A) and (B), read together, indicate that an employer's disclosure obligations under (A) exist to serve interests beyond the problem of inaccurate reports. Other parts of the Act corroborate that conclusion. In order to see why this is so, it is helpful to recall that the Act identifies at least three distinct actors with respect to any consumer report. A consumer reporting *agency* aggregates data and creates the report. Agencies then supply reports to *users* (*e.g.*, employers), which rely on them to decide the fate of *consumers* (*e.g.*, job applicants).

The interests protected by the Act's disclosure rules reflect the distinctive roles played by the three types of actors. Agencies' disclosure obligations protect consumers' interest in accurate reporting. The Act's agency-specific compliance procedures instruct that reports must be compiled to "assure maximum possible accuracy." *Id.* § 1681e(b). And all reports furnished for employment purposes must be "complete and up to date." *Id.* § 1681k(a)(2). Upon a request from a consumer, an agency must "clearly and accurately disclose" everything in the consumer's file, *id.* § 1681g(a), and notify the consumer that there are procedures for disputing the file's accuracy, *id.* § 1681g(c)(1)(B)(iii). In addition, the Act dedicates a section to the procedures for disputing the accuracy of an agency's report. *Id.* § 1681i. No comparable section exists for disputing an agency report on any other ground.

The Act does not similarly link accuracy concerns and the disclosure obligations imposed on "users." Quite the opposite. The section of the Act entitled "Requirements on users of consumer reports" refers to accuracy only to require that users instruct consumers to lodge accuracy-based disputes with the agency. *Id.* § 1681m(a)(4)(B). The substantive inter-

est behind a user's disclosure obligation is the one at issue here: allow the consumer to review the reason for any adverse decision and to respond. These rights are independent of any underlying factual disputes. A consumer might, for example, wish to concede the facts presented in the report but to bring additional facts to the employer's attention that put matters in a better light for the consumer. In other words, the consumer might wish to use the "confession and avoidance" option that existed at common law. 5 CHARLES ALAN WRIGHT *et al.*, FEDERAL PRACTICE AND PROCEDURE § 1270 (3d ed. 2017). Something similar is available to public employees, who have the right to a pre-termination hearing before a discharge in many instances. See *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542–43 (1985). The employee has the right to present her side of the story "even where the facts are clear" because "the appropriateness or necessity of the discharge may not be; in such cases, the only meaningful opportunity to invoke the discretion of the decisionmaker is likely to be before the termination takes effect." *Id.* at 543.

Providing context may be more valuable than contesting accuracy. Some consumers may collect supporting documents quickly enough to corroborate an accuracy challenge before the employer makes its decision. Yet in a swearing contest, the employer might not be likely to side with the consumer (applicant) over the agency. But information that seems damning at first glance might not be so bad in context. A person with a spotted record might convince an employer to revisit its decision if she can explain what happened.

That Robertson has not pleaded what she may have said if given the chance to respond, or that she may not have convinced Allied to honor its offer, is immaterial to the sub-

stance of her interest in responding. Article III's strictures are met not only when a plaintiff complains of being deprived of some benefit, but also when a plaintiff complains that she was deprived of a chance to obtain a benefit. *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 983 (2017); *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993). An informational injury can be concrete when the plaintiff is entitled to receive and review substantive information. The Supreme Court recognized as much in *Akins*, where it held that "[t]here is no reason to doubt [that plaintiffs'] claim that the information would help them (and others to whom they would communicate it) to evaluate candidates for public office, especially candidates who received assistance from AIPAC, and to evaluate the role that AIPAC's financial assistance might play in a specific election. Respondents' injury consequently seems concrete and particular." 524 U.S. at 21. Applying that principle to our case, what matters is that Robertson was denied information that could have helped her craft a response to Allied's concerns.

*Spokeo* does not require a contrary result. There the Court hypothesized that there might not be any concrete harm when "a consumer reporting agency fails to provide the required notice to a user of the agent's consumer information, [but] that information … may be entirely accurate." *Spokeo*, 136 S. Ct. at 1550. We put to one side the fact that this passage is probably dicta, because the case before the Court concerned inaccurate information. *Id.* at 1545. The Court never decided whether a concrete injury had been alleged. *Id.* at 1550. Furthermore, *Spokeo* was discussing a different point in the process—the relationship between an agency and a user (*i.e.* employer), not the relationship between the user and the consumer (*i.e.* the job applicant). The statutory

duties that apply to each of these situations differ in important respects, as we noted earlier.

We conclude, therefore, that Robertson has alleged enough at this stage to demonstrate standing under Article III. Her injury is concrete and particular to her, and the remaining criteria for standing (causation, redressability) are also present. This is not to say that she is home-free, of course. We express no opinion at this point on questions such as her suitability to serve as the class representative, the propriety of class certification, or the adequacy of the proposed settlement. We hold only that she has adequately alleged that what Allied divulged was insufficient under the Act, and that she is entitled from an Article III standpoint to press her adverse-action claim.

## III

Although Robertson does not argue that she has standing to bring her notice claim, she takes the position that the district court was nonetheless empowered to approve the settlement agreement, as it pertains to notice, because the parties reached their tentative settlement before the Article III issue was noticed. She would like us to order the district court to resume the Rule 23(e) process and consider whether to approve the settlement. This is an ambitious claim, given that the district court's subject-matter jurisdiction must be secure before it can do *anything* to resolve a case. That rule applies with just as much force to a court's approval of a settlement under Rule 23 as it does for anything else. See *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 650 (7th Cir. 2006).

Robertson offers two reasons why the general rule should not apply here, notwithstanding the notice claim's Article III problems. The first is that her concrete interest in the agreement supports jurisdiction. See *Schumacher v. SC Data Ctr., Inc.*, No. 2:16-CV-04078-NKL, 2016 WL 7007539, at *1 (W.D. Mo. Nov. 29, 2016) ("[B]ecause the parties entered into a settlement agreement … the issue is not whether the Court has subject matter jurisdiction over her FCRA claims. Instead, the issue is whether the Court has subject matter jurisdiction to enforce the parties' settlement agreement."). With all due respect to the district court in *Schumacher*, however, that analysis cannot get off the ground. An approved settlement takes the form of a judgment of the court, and without both Article III power and proper subject-matter jurisdiction, the court cannot act. The district court here correctly saw the problem and took the issues in the right order.

Robertson's second argument is that post-agreement legal changes do not warrant unsettling a valid agreement. This argument also falls apart for several reasons. *Spokeo* did not change the law of standing and thus was not a post-agreement change in the law. It merely reiterated that an Article III injury must be both particular and concrete. 136 S. Ct. at 1458; see also *Lujan*, 504 U.S. at 560 (compiling cases holding that injury in fact must be concrete and particularized). The district court was duty-bound to look into its jurisdiction the minute the question arose. Article III's requirements must be continuously met throughout the life of a case. See *Walters v. Edgar*, 163 F.3d 430, 432 (7th Cir. 1998). That this was a class action makes no difference: nothing in the Rules of Civil Procedure may "abridge, modify, or enlarge any substantive right." 28 U.S.C. § 2072(b). Finally, changes in the legal background that do not affect Article III

or subject-matter jurisdiction are an entirely different matter.
In those instances, one of the risks the parties address in the
settlement is the chance of just such a change, and so such
changes do not require the court to reject the settlement. See
*Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084, 1091 (6th Cir.
2016) (affirming approval of class-action settlement because
change in underlying state law did not affect plaintiffs'
standing to bring suit); *Ehrheart v. Verizon Wireless*, 609 F.3d
590, 596 (3d Cir. 2010) (change in law eliminating buyers'
cause of action did not render a preliminarily approved set-
tlement moot); *Dawson v. Pastrick*, 600 F.2d 70, 72 (7th Cir.
1979) (affirming approval of consent decree despite Supreme
Court disapproving—on the same day that the decree was
entered—of one form of relief authorized in the decree).

## IV

That leaves only the question whether Robertson should
have been permitted to amend her complaint. The district
court denied her request—a decision we review for abuse of
discretion. *Huon v. Denton*, 841 F.3d 733, 745 (7th Cir. 2016).
Ordinarily a plaintiff should have the chance to amend if she
had no earlier chance to remedy the relevant deficiency. *Do-
ermer v. Callen*, 847 F.3d 522, 528 (7th Cir. 2017). Robertson
had no such chance. Nevertheless, a district court may deny
leave to amend a complaint if an amendment would be futile
or the plaintiff cannot explain how any revisions might ad-
dress the deficiencies. The latter describes this case. The dis-
trict court denied Robertson's request for leave to amend be-
cause she had not indicated what facts she could plead that
would salvage her Article III standing for the notice claim.
She has not offered any on appeal either. The closest she
comes is stating an intention to "conform her complaint to a

change in applicable law following the district court's inter-pretation of *Groshek* and *Spokeo*." We therefore find no abuse of discretion in the court's decision to deny leave to amend.

**V**

Based on information discovered in a background check, Allied rescinded Robertson's job offer without furnishing Robertson a copy of that report on which it relied. By failing to do so, Allied deprived her of the chance to review it and present her side of the story. That is the very reason why the FCRA obligates employers to produce a copy of the report before taking adverse action. Because the alleged injury is concrete and Robertson otherwise alleged enough to support her Article III standing on her adverse-action claim, we REVERSE the judgment of the district court dismissing that claim for lack of standing and REMAND for further proceedings. In all other respects, the judgment of the district court is AFFIRMED.