**2022 IL 126511**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 126511)

MARQUITA McDONALD, Appellee, v. SYMPHONY
BRONZEVILLE PARK, LLC, *et al.* (Symphony Bronzeville Park, LLC, Appellant).

*Opinion filed February 3, 2022.*

JUSTICE OVERSTREET delivered the judgment of the court, with opinion.

Chief Justice Anne M. Burke and Justices Garman, Theis, Neville, and Carter concurred in the judgment and opinion.

Justice Michael J. Burke specially concurred, with opinion.

## OPINION

¶ 1 The instant action involves an interlocutory appeal pursuant to Illinois Supreme Court Rule 308 (eff. July 1, 2017), wherein we consider the following certified question: "Do[ ] the exclusivity provisions of the Workers' Compensation Act [(Compensation Act) (820 ILCS 305/1 *et seq.* (West 2016))] bar a claim for

statutory damages under [the Biometric Information Privacy Act (Privacy Act) (740 ILCS 14/1 *et seq.* (West 2016))] where an employer is alleged to have violated an employee's statutory privacy rights under [the Privacy Act]?" The appellate court allowed defendant's Rule 308 appeal (Ill. S. Ct. R. 308 (eff. July 1, 2017)) and answered the certified question in the negative. 2020 IL App (1st) 192398. This court allowed Bronzeville's petition for leave to appeal (Ill. S. Ct. R. 315 (eff. Oct. 1, 2020)), and for the following reasons, also answers the certified question in the negative.

¶ 2                                   I. BACKGROUND

¶ 3        On August 17, 2017, Marquita McDonald filed a putative class action against the defendant, Symphony Bronzeville Park, LLC (Bronzeville), alleging that Bronzeville's collection, use, and storage of McDonald's and the putative class's sensitive biometric data pursuant to a fingerprint timekeeping system violates the Privacy Act.[1] In April 2019, McDonald filed a first-amended complaint, wherein she, *inter alia*, added as defendants two related entities, Symcare Healthcare LLC and Symcare HMG LLC; withdrew a common-law negligence claim; and removed allegations that she suffered mental anguish as a result of the Privacy Act violations, stating that the allegations of mental anguish were "unnecessary to her recovery on her [Privacy Act] claim."

¶ 4        According to the amended complaint, Symcare Healthcare LLC owns a network of post-acute-care facilities, including Bronzeville's location, which provide patients with a variety of services, from rehabilitative to palliative care, typically after they have undergone major medical procedures. Pursuant to the allegations specific to her, McDonald alleged that she was employed by Bronzeville from December 2016 to February 2017 and that Bronzeville utilized a biometric information system, which required her to scan her fingerprint, as a means of authenticating employees and tracking their time. McDonald alleged that she was never provided with nor signed a release consenting to storage of her biometric

---

[1]Plaintiff also named Symphony Healthcare LLC as a defendant in her original complaint, but she subsequently dismissed her claim against Symphony Healthcare LLC.

information and had never been informed of the purposes or length of time for which her biometric information was being stored.

¶ 5        Accordingly, McDonald alleged that Bronzeville and the other defendants had violated—and continued to violate—various statutory requirements of the Privacy Act (740 ILCS 14/1 *et seq.* (West 2016)). Specifically, McDonald and the putative class alleged that defendants negligently failed to obtain written releases from them before collecting, using, and storing their biometric identifiers and biometric information (*id.* § 15(b)(3)); negligently failed to inform them in writing that their biometric identifiers and biometric information were being collected and stored (*id.* § 15(b)(1)); negligently failed to inform them in writing of the specific purpose and length of time for which their biometric identifiers or biometric information was being collected, stored, and used (*id.* § 15(b)(2)); and negligently failed to publicly provide a retention schedule or guideline for permanently destroying the biometric identifiers and biometric information (*id.* § 15(a)).

¶ 6        McDonald and the putative class alleged that, by negligently collecting, storing, and using their biometric identifiers and biometric information, Bronzeville violated their rights to privacy in their biometric identifiers or biometric information as set forth in the Privacy Act. 740 ILCS 14/1 *et seq.* (West 2016). McDonald and the putative class sought (1) injunctive and equitable relief to protect their interests by requiring Bronzeville to comply with the Privacy Act's requirements, (2) liquidated damages of $1000 per violation for each negligent violation of section 20(1) of the Privacy Act (*id* § 20(1)), and (3) reasonable attorney fees and costs and other litigation expenses pursuant to section 20(3) of the Privacy Act (*id.* § 20(3)).

¶ 7        Bronzeville filed motions to dismiss McDonald's class action complaint pursuant to sections 2-615 and 2-619(a)(9) of the Code of Civil Procedure. 735 ILCS 5/2-615, 2-619(a)(9) (West 2016). Bronzeville asserted, *inter alia*, that McDonald and the putative class alleged claims that were barred by the exclusive remedy provisions of the Compensation Act (820 ILCS 305/1 *et seq.* (West 2016)). Bronzeville argued that the Compensation Act is the exclusive remedy for accidental injuries transpiring in the workplace and that an employee has no common-law or statutory right to recover civil damages from an employer for injuries incurred in the course of her employment.

¶ 8 On June 17, 2019, the Cook County circuit court denied Bronzeville's motions to dismiss. The circuit court rejected Bronzeville's argument that the Compensation Act preempted any claims by an employee against an employer under the Privacy Act. The circuit court held that McDonald's injury involved the loss of the ability to maintain her privacy rights, which was neither a psychological nor physical injury and not compensable under the Compensation Act. The circuit court further held that the Privacy Act specifically defined "written release" in the employment context and, thus, the legislature intended for the Privacy Act to apply to violations by employers in the workplace. Accordingly, the circuit court allowed McDonald's claim to proceed in the circuit court. 740 ILCS 14/10 (West 2016) (" 'Written release' means informed written consent or, in the context of employment, a release executed by an employee as a condition of employment.").

¶ 9 On July 18, 2019, Bronzeville filed a motion for reconsideration of the circuit court's conclusion or, alternatively, a motion to certify questions for immediate appeal pursuant to Illinois Supreme Court Rule 308(a) (eff. July 1, 2017). Bronzeville argued, *inter alia*, that the Compensation Act and the Privacy Act can both reasonably be given effect in an employment context. Bronzeville explained that when an employee demonstrates that injunctive or declaratory relief is appropriate, then that employee may obtain redress under the Privacy Act, but when the employee seeks a statutory right to damages under the Privacy Act, that claim is preempted by the exclusive remedies afforded under the Compensation Act.

¶ 10 In a written order entered on October 29, 2019, the circuit court denied Bronzeville's motion to reconsider but certified the following question for interlocutory appeal: "Do[ ] the exclusivity provisions of the Workers' Compensation Act bar a claim for statutory damages under [the Privacy Act] where an employer is alleged to have violated an employee's statutory privacy rights under [the Privacy Act]?" The circuit court also stayed the proceedings before it, pending resolution of the certified question in the appellate court.

¶ 11 The appellate court granted Bronzeville's request for leave to appeal in December 2019. 2020 IL App (1st) 192398, ¶ 8. Citing this court's decision in *Folta v. Ferro Engineering*, 2015 IL 118070, the appellate court held that, to determine whether an employer's liability is governed exclusively by the provisions of the Compensation Act, the court must consider whether " 'the injury is the type of

work-related injury within the purview of the [Compensation Act].' " 2020 IL App (1st) 192398, ¶ 21 (quoting *Folta*, 2015 IL 118070, ¶ 36).

¶ 12    Recognizing that an employee can escape the exclusivity provisions of the Compensation Act if she establishes that her injury is not "compensable" under the Compensation Act, the appellate court nevertheless noted the dearth of caselaw applying a compensability standard to the question of whether the Compensation Act preempts a claim under the Privacy Act. *Id.* ¶ 22. The appellate court agreed with the observation from the federal court's decision in *Treadwell v. Power Solutions International, Inc.*, 427 F. Supp. 3d 984 (N.D. Ill. 2019), that the *Folta* court made clear that the inquiry regarding whether an injury is compensable " 'is broader than just whether an injury arises out of and in the course of employment and does, to some extent, consider the character of the injury.' " 2020 IL App (1st) 192398, ¶ 22 (quoting *Treadwell*, 427 F. Supp. 3d at 992).

¶ 13    The appellate court concluded that

"a claim by an employee against an employer for liquidated damages under the Privacy Act—available without any further compensable actual damages being alleged or sustained and designed in part to have a preventative and deterrent effect—[does not] represent[ ] the type of injury that categorically fits within the purview of the Compensation Act, which is a remedial statute designed to provide financial protection for workers that have sustained an actual injury." *Id.* ¶ 27.

Accordingly, the appellate court "conclude[d] that the exclusivity provisions of the Compensation Act do not bar a claim for statutory, liquidated damages, where an employer is alleged to have violated an employee's statutory privacy rights under the Privacy Act, as such a claim is simply not compensable under the Compensation Act." *Id.* Accordingly, the appellate court answered the certified question in the negative and remanded the matter to the circuit court. *Id.* ¶ 29.

¶ 14    On January 27, 2021, this court allowed Bronzeville's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Oct. 1, 2020). We also allowed Mercyhealth System Corporation; PDB Worldwide, Inc.; A. Lava & Son Company; Kilcoy Pastoral Company Trading USA; Yaskawa America, Inc.; Top Die Casting Company; United Scrap Metal, Inc.; Bella Elevator, LLC; Chronister Oil Company; UCAL

Systems, Inc.; Cross Road Centers Illinois, LLC; Trippe Manufacturing Company; Black Horse Carriers, Inc.; and Oxford Hotels and Resorts (collectively referred to as the Consortium of Affected Illinois Employers) and the Restaurant Law Center leave to file briefs as *amici curiae* in support of Bronzeville's position. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010). We allowed the Workers' Compensation Lawyers Association and the Illinois Trial Lawyers Association leave to file briefs as *amici curiae* in support of McDonald's position. *Id.* We also allowed the National Employment Lawyers Association, Illinois Chapter, and the National Employment Law Project leave to file a joint brief as *amici curiae* in support of McDonald's position. *Id.*

¶ 15                                    II. ANALYSIS

¶ 16        Illinois Supreme Court Rule 308 (eff. July 1, 2017) provides in relevant part:

"When the trial court, in making an interlocutory order not otherwise appealable, finds that the order involves a question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, the court shall so state in writing, identifying the question of law involved. Such a statement may be made at the time of the entry of the order or thereafter on the court's own motion or on motion of any party. The [a]ppellate [c]ourt may thereupon in its discretion allow an appeal from the order."

"By definition, certified questions are questions of law subject to *de novo* review." *Rozsavolgyi v. City of Aurora*, 2017 IL 121048, ¶ 21.

¶ 17        The certified question in this case asks us to construe the language of the Compensation Act and the Privacy Act to determine whether the Compensation Act's exclusivity provisions bar an employee's claim filed in the circuit court for statutory damages under the Privacy Act. "Our primary objective when construing a statute is to ascertain and give effect to the intent of the legislature." *Eighner v. Tiernan*, 2021 IL 126101, ¶ 19. "The most reliable indicator of legislative intent is the plain and ordinary meaning of the statutory language." *Id.* "When construing statutory language, we view [a] statute in its entirety, construing words and phrases in light of other relevant statutory provisions and not in isolation." *Id.*; see also

*Vaught v. Industrial Comm'n*, 52 Ill. 2d 158, 165 (1972) ("In construing the provisions of the Workmen's Compensation Act, all portions thereof must be read as a whole and in such manner as to give to them the practical and liberal interpretation intended by the legislature.").

¶ 18     "When the statutory language is plain and unambiguous, we may not depart from the law's terms by reading into it exceptions, limitations, or conditions the legislature did not express, nor may we add provisions not found in the law." *Rosenbach v. Six Flags Entertainment Corp.*, 2019 IL 123186, ¶ 24. Nevertheless, in construing a statute, the court may consider the reason for the law, the problems sought to be remedied, the purposes to be achieved, and the consequences of construing the statute one way or another. *Hubble v. Bi-State Development Agency of the Illinois-Missouri Metropolitan District*, 238 Ill. 2d 262, 268 (2010).

¶ 19                                                    Privacy Act

¶ 20     The Privacy Act was enacted in 2008 to help regulate "the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." 740 ILCS 14/5(g) (West 2016). The Privacy Act defines "[b]iometric identifier" to mean "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." *Id.* § 10. "Biometric information" means "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." *Id.*

¶ 21     The Privacy Act imposes restrictions on how private entities like Bronzeville collect, retain, use, disclose, and destroy "biometric identifiers" and "biometric information." 740 ILCS 14/1 *et seq.* (West 2016). Relevant herein, the Privacy Act mandates that, before obtaining an individual's fingerprint, a private entity must inform the individual in writing regarding the fact that her biometric identifier or biometric information is being collected or stored; the specific purpose of collecting or using the biometric identifier or biometric information; and the length of term for which the biometric identifier or biometric information will be collected, stored, and used. *Id.* § 15(b). The entity must also obtain a signed "written release" from an individual before collecting her biometric identifier or biometric information. *Id.* § 15(b)(3). In the employment context, the Privacy Act specifically defines

"written release" as "a release executed by an employee as a condition of employment." *Id.* § 10.

¶ 22    The Privacy Act also requires a private entity to obtain consent before disclosing or disseminating an individual's biometric identifier to a third party. *Id.* § 15(d) (no private entity may disclose biometric identifier or biometric information unless subject consents to disclosure, disclosure completes financial transaction requested by subject, disclosure is required by state or federal law or municipal ordinance, or disclosure is required pursuant to valid warrant or subpoena). Moreover, a private entity in possession of biometric identifiers or biometric information must make publicly available a written "retention schedule and guidelines" it uses for permanently destroying biometric identifiers and biometric information within a certain time period. *Id.* § 15(a).

¶ 23    "These provisions are enforceable through private rights of action." *Rosenbach*, 2019 IL 123186, ¶ 21. Specifically, section 20 of the Privacy Act provides that "[a]ny person aggrieved by a violation of this Act shall have a right of action in a [s]tate circuit court or as a supplemental claim in federal district court against an offending party." 740 ILCS 14/20 (West 2016). Section 20 of the Privacy Act further provides:

"[a] prevailing party may recover for each violation:

(1) against a private entity that negligently violates a provision of this Act, liquidated damages of $1,000 or actual damages, whichever is greater;

(2) against a private entity that intentionally or recklessly violates a provision of this Act, liquidated damages of $5,000 or actual damages, whichever is greater;

(3) reasonable attorneys' fees and costs, including expert witness fees and other litigation expenses; and

(4) other relief, including an injunction, as the [s]tate or federal court may deem appropriate." *Id.*

¶ 24    "Through the [Privacy] Act, our General Assembly has codified that individuals possess a right to privacy in and control over their biometric identifiers and

biometric information." *Rosenbach*, 2019 IL 123186, ¶ 33. "Accordingly, when a private entity fails to comply with one of section 15's requirements, that violation constitutes an invasion, impairment, or denial of the statutory rights of any person or customer whose biometric identifier or biometric information is subject to the breach." *Id.* "The violation, in itself, is sufficient to support the individual's or customer's statutory cause of action." *Id.* "Other than the private right of action authorized in section 20 of the [Privacy] Act, no other enforcement mechanism is available." *Id.* ¶ 37.

¶ 25 McDonald's class-action complaint alleges that Bronzeville and the other defendants violated the provisions of section 15 of the Privacy Act when they collected employees' fingerprints without following the statutorily prescribed protocol. McDonald seeks redress on her behalf and on behalf of a class of similarly situated individuals based on the defendants' failure to comply with the statute's requirements.

¶ 26 Bronzeville argues that, despite the plain language of section 20 of the Privacy Act providing "a right of action in a [s]tate circuit court," the Compensation Act precludes McDonald's class action in the circuit court because the alleged injury occurred in the course of her employment and must therefore be adjudicated before the Illinois Workers' Compensation Commission pursuant to the Compensation Act. See 820 ILCS 305/1(d) (West 2016) (the Compensation Act provides financial protection to workers for "accidental injuries arising out of and in the course of the employment"); *id.* § 18 (questions arising under Compensation Act, if not settled by agreement of the parties, shall be determined by the Workers' Compensation Commission). We agree with Bronzeville that this court has previously applied the plain language of the exclusivity provisions of the Compensation Act to preclude an employee's statutory cause of action against his employer in the circuit court. See *Gannon v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.*, 13 Ill. 2d 460, 463 (1958) (supreme court held that workmen's compensation statute barred employee's statutory action pursuant to the scaffold statute (Ill Rev. Stat. 1957, ch. 48, ¶¶ 60 to 69) against his employer in the circuit court for injuries he sustained when he fell from a ladder while climbing to a scaffold in the course of his employment). However, for reasons hereinafter defined, we find that the physical injury that the plaintiff in *Gannon* suffered as a result of falling from a ladder in the course of, and arising from, his employment is distinguishable from the injury

McDonald alleges here on behalf of herself and the class.

¶ 27                        Compensation Act

¶ 28     The legislature enacted the Compensation Act "to abrogate the common law rights and liabilities which previously governed an injured employee's ability to recover against his employer." *Sharp v. Gallagher*, 95 Ill. 2d 322, 326 (1983). The Compensation Act "established a new 'system of liability without fault, designed to distribute the cost of industrial injuries without regard to common-law doctrines of negligence, contributory negligence, assumption of risk, and the like.' " *Id.* (quoting *Gannon*, 13 Ill. 2d at 463). " 'Balanced against the imposition of no-fault liability upon the employer are statutory limitations upon the amount of the employee's recovery, depending upon the character and the extent of the injury.' " *Id.* (quoting *McCormick v. Caterpillar Tractor Co.*, 85 Ill. 2d 352, 356 (1981)); see also *Folta*, 2015 IL 118070, ¶ 12 ("In exchange for a system of no-fault liability upon the employer, the employee is subject to statutory limitations on recovery for injuries and occupational diseases arising out of and in the course of employment."). "This trade-off between employer and employee promoted the fundamental purpose of the [Compensation] Act, which was to afford protection to employees by providing them with prompt and equitable compensation" for injuries or death suffered in the course of employment. *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 180-81 (1978); see also *Pathfinder Co. v. Industrial Comm'n*, 62 Ill. 2d 556, 563 (1976) ("The [Compensation] Act is remedial in nature in that it is intended to provide financial protection for the injured worker."); *Collier v. Wagner Castings Co.*, 81 Ill. 2d 229, 241 (1980) ("[T]he basic purpose of workmen's compensation [is] to place the cost of industrial accidents upon the industry.").

¶ 29     It is a well-settled principle that the Compensation Act is a remedial statute and should be liberally construed to effectuate its main purpose—to provide financial protection for injured workers until they can return to the workforce. *Interstate Scaffolding, Inc. v. Illinois Workers' Compensation Comm'n*, 236 Ill. 2d 132, 146, 149 (2010). Damages are awarded according to a predetermined fee schedule created by the Illinois Workers' Compensation Commission, eliminating the variability in the value of each judgment. 820 ILCS 305/8.2 (West 2016). "[W]orker's compensation is a statutory remedy and the Workers' Compensation

Commission, as an administrative agency, is without general or common law powers." *Interstate Scaffolding, Inc.*, 236 Ill. 2d at 145. "[T]he Commission is limited to those powers granted by the legislature." *Id.* "Any action taken by the Commission must be specifically authorized by statute." *Id.*

¶ 30 " 'As part of this "balancing," the [Compensation] Act further provides that the statutory remedies under it shall serve as the employee's exclusive remedy if he sustains a compensable injury.' " *Sharp*, 95 Ill. 2d at 326 (quoting *McCormick*, 85 Ill. 2d at 356). "[T]he [Compensation] Act imposes liability without fault upon the employer and, in return, prohibits common law suits by employees against the employer." *Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 462 (1990). The Compensation Act contains exclusive remedy provisions as

> " 'part of the *quid pro quo* in which the sacrifices and gains of employees and employers are to some extent put in balance, for, while the employer assumes a new liability without fault, he is relieved of the prospect of large damage verdicts.' (2A A. Larson, Law of Workmen's Compensation § 65.11 (1988).)" *Id.*

See also *Moushon v. National Garages, Inc.*, 9 Ill. 2d 407, 412 (1956). In effect, the employer relinquishes certain defenses, and the employee relinquishes certain recoverable elements of damage of a common-law negligence action, a balance that we have determined is a reasonable exercise of the legislature's police power for the promotion of the general welfare. *Moushon*, 9 Ill. 2d at 412.

¶ 31 Sections 5(a) and 11 of the Compensation Act constitute the exclusive remedy provisions. Section 5(a) of the Compensation Act provides, in relevant part:

> "No common law or statutory right to recover damages from the employer *** for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act, to any one wholly or partially dependent upon him, the legal representatives of his estate, or any one otherwise entitled to recover damages for such injury." 820 ILCS 305/5(a) (West 2016).

Similarly, section 11 of the Compensation Act provides:

"The compensation herein provided, together with the provisions of this Act, shall be the measure of the responsibility of any employer engaged in any of the enterprises or businesses enumerated in Section 3 of this Act, or of any employer who is not engaged in any such enterprises or businesses, but who has elected to provide and pay compensation for accidental injuries sustained by any employee arising out of and in the course of the employment according to the provisions of this Act, and whose election to continue under this Act, has not been nullified by any action of his employees as provided for in this Act." *Id.* § 11.

¶ 32    Considering these two "exclusivity provisions," this court "has indicated that the [Compensation] Act generally provides the exclusive means by which an employee can recover against an employer for a work-related injury." *Folta*, 2015 IL 118070, ¶ 14.

"However, an employee can escape the exclusivity provisions of [sections 5(a) and 11 of] the [Compensation] Act if the employee establishes that the injury (1) was not accidental; (2) did not arise from his employment; (3) was not received during the course of employment; or (4) was not compensable under the [Compensation] Act." *Id.*

At issue in this case is the fourth exception to the Compensation Act's exclusive remedy provision, *i.e.*, whether McDonald's and the putative class's alleged injuries are "compensable" under the Compensation Act.

¶ 33    Bronzeville argues that the exclusivity provisions are broadly worded and require exclusive resort to the Compensation Act's remedy for any injury arising out of and in the course of employment. Bronzeville thus argues that McDonald's claim cannot proceed in the circuit court because it involves an injury (*Rosenbach*, 2019 IL 123186, ¶ 34 (Privacy Act violation injury is "real and significant")) that occurred in the line of duty and arose out of and in the course of employment in the workplace. As such, Bronzeville essentially argues that this fourth exception is a restatement of the second and third exceptions.

¶ 34    McDonald, on the other hand, interprets the fourth exception to mean that only physical or psychological injuries are compensable under the Compensation Act. McDonald and the *amici* supporting McDonald's position note that, if the General

Assembly had intended for Privacy Act claims to fall under the provisions of the Compensation Act, it would have so provided. Instead, it did not because the Workers' Compensation Commission is not the appropriate forum to adjudicate such claims, given the privacy inquiries are foreign to the workers' compensation system; the system has limited discovery provisions and a lack of motion practice, which would preclude prompt and efficient handling of such claims; and the primary purpose of the Compensation Act would then not be given its full effect.

¶ 35   Bronzeville counters by contending that McDonald has failed to demonstrate a principled basis for distinguishing between the real and significant Privacy Act injury that she purportedly suffered during the course of and arising from her employment and those injuries the court has previously deemed compensable under the Compensation Act. See *Meerbrey*, 139 Ill. 2d at 469 (holding that the Compensation Act's exclusivity provisions precluded employee, who suffered emotional distress as a consequence of false imprisonment, false arrest, or malicious prosecution in the workplace, from suing for civil damages against his former employer); *Collier*, 81 Ill. 2d at 241 (holding that the Compensation Act's exclusivity provisions precluded employee, who had collected workers' compensation settlement, from suing for civil damages for emotional distress against his employer who failed to provide medical assistance after he suffered a heart attack); *Pathfinder*, 62 Ill. 2d at 564-65 (holding that employee, who suffered a sudden, severe emotional shock and psychological disability after assisting coemployee whose hand was severed in a machine, could recover under the Compensation Act even though no physical trauma or injury was sustained).

¶ 36   In *Folta*, this court acknowledged that it "has had limited opportunity to address what we originally meant in *Collier* when we used the phrase 'not compensable' to carve out a category of injuries for which the exclusive remedy provision[s] would not be applicable." 2015 IL 118070, ¶ 17. This court noted that its jurisprudence on the matter was largely contained in a handful of decisions. *Id.* ¶¶ 20-23 (citing *Meerbrey*, 139 Ill. 2d at 467-68, *Collier*, 81 Ill. 2d at 237, and *Pathfinder*, 62 Ill. 2d at 563).

¶ 37   In *Folta*, the plaintiff was diagnosed with mesothelioma and sued his former employer after allegedly being exposed to asbestos on the job. *Id.* ¶ 3. His employer moved to dismiss the complaint, arguing that the Workers' Occupational Diseases

Act's (820 ILCS 310/1 *et seq.* (West 2010)) exclusivity provisions barred plaintiff's claim.[2] *Folta*, 2015 IL 118070, ¶ 4. The plaintiff responded that the exclusivity provisions did not bar his civil action because he could not recover under the Workers' Occupational Diseases Act in that he had filed his claim beyond the 25-year repose period and, thus, his claim was literally "not compensable" under that act. *Id.*

¶ 38    The circuit court agreed with the employer and granted the motion to dismiss. *Id.* ¶ 6. The appellate court reversed and remanded, finding that the plaintiff's literal inability to recover damages under the Workers' Occupational Diseases Act placed his case within the exclusivity exception for "noncompensable injuries" and therefore his tort suit against his employer was not barred by the exclusivity provisions. *Id.* ¶ 7. However, this court reversed the appellate court's judgment, concluding that the exclusivity provisions barred the employee's cause of action against his employer to recover civil damages for a disease that arose out of and in the course of employment even though no compensation was available under the acts due to the statutory time limits on the employer's liability. *Id.* ¶¶ 10, 52.[3]

¶ 39    This court in *Folta* held that the question was not whether an injury was literally compensable, *i.e.*, whether the employee could literally receive compensation for injuries under the acts. *Id.* ¶ 23. The court held that "whether an injury is compensable is related to whether the type of injury categorically fits within the purview of the" workers' compensation acts. *Id.* Because the Workers'

---

[2]The court in *Folta* addressed whether the employee's negligence action against his employer was barred by the exclusive remedy provisions of the Workers' Occupational Diseases Act (820 ILCS 310/1 *et seq.* (West 2010)), an act not at issue here. Nevertheless, the court in *Folta* relied on precedent interpreting the Compensation Act because the corresponding exclusivity provisions in the two acts "have been viewed analogously for purposes of judicial construction." 2015 IL 118070, ¶ 13. The court held that "cases that have construed the exclusivity provisions in the context of the *** Compensation Act would also apply in the context of the Workers' Occupational Disease Act." *Id.* The converse would also apply.

[3]Sections 5(a) and 11 of the Compensation Act were subsequently amended by Public Act 101-6, § 5 (eff. May 17, 2019). The amendment added section 1.2, providing that subsection (a) of section 5 and section 11 do not apply to any injury or death sustained by an employee as to which the recovery of compensation benefits under the Compensation Act would be precluded due to the operation of any period of repose or repose provision. See 820 ILCS 305/1.2 (West 2020). The amendment provides that, as to any such injury or death, the employee or the employee's heirs have the nonwaivable right to bring a civil action at law against any employer. *Id.* The subject of this amendment is specific to the facts in *Folta* that are not at issue in this appeal.

- 14 -

Occupational Diseases Act specifically addressed diseases caused by asbestos exposure and employees had recovered for disabilities or death arising from workplace asbestos exposure, including mesothelioma, this court concluded, "it is evident that the legislature intended that occupational diseases arising from workplace asbestos exposure are the type of injury contemplated to be within the scope of" the Workers' Occupational Diseases Act. *Id.* ¶ 25.

¶ 40 Accordingly, the exclusivity challenge here depends upon the type of injury sustained. *Id.*; see also 9 Lex K. Larson, Larson's Workers' Compensation Law § 104.05[4] (Matthew Bender, rev. ed. 2021). Whether the exclusivity provision bars an employee's civil claims depends upon the nature of the injury because the exclusivity provisions, by their express language, only apply if the injury is one that is covered by the Compensation Act. 820 ILCS 305/5(a) (West 2016) (no right to recover damages, other than the compensation herein provided, is available to any employee who is covered by the Compensation Act's provisions); *Id.* § 11 (the compensation herein provided, together with the provisions of this Compensation Act, shall be the measure of the employer's responsibility).

¶ 41 The Compensation Act's main purpose is to provide financial protection for injured workers until they can return to the workforce. *Interstate Scaffolding, Inc.*, 236 Ill. 2d at 146. The Compensation Act sets forth a compensation schedule corresponding to death, to injuries to specific body parts, and to inability to work. 820 ILCS 305/7, 8 (West 2016). The Compensation Act also requires companies to report "all accidental deaths, injuries and illnesses arising out of and in the course of the employment" to the Workers' Compensation Commission. *Id.* § 6(b). These are injuries that affect an employee's capacity to perform employment-related duties, which is the type of injury for which the workers' compensation scheme was created.

¶ 42 These provisions are consistent with the observation in *Pathfinder* that the test for whether an employee suffers a compensable injury under the Compensation Act is " 'whether there was a harmful change in the human organism—not just its bones and muscles, but its brain and nerves as well.' " *Pathfinder*, 62 Ill. 2d at 565 (quoting Arthur Larson, *Mental and Nervous Injury in Workmen's Compensation*, 23 Vand. L. Rev. 1243, 1260 (1970)); see also *Laffoon v. Bell & Zoller Coal Co.*, 65 Ill. 2d 437, 446 (1976) ("[T]he purpose of the Workmen's Compensation Act is

- 15 -

to afford employees financial protection when their earning power is temporarily diminished or terminated due to employment injures."). These are the injuries for which the Workers' Compensation Commission is tasked with deciding compensation pursuant to the Compensation Act.

¶ 43     The personal and societal injuries caused by violating the Privacy Act's prophylactic requirements are different in nature and scope from the physical and psychological work injuries that are compensable under the Compensation Act. The Privacy Act involves prophylactic measures to prevent compromise of an individual's biometrics. *Rosenbach*, 2019 IL 123186, ¶ 36. McDonald's claim seeks redress for the lost opportunity "to say no by withholding consent." *Id.* ¶ 34. McDonald alleges that Bronzeville has violated her and the class's right to maintain their biometric privacy. See *id.*

¶ 44     As such, the circuit court correctly reasoned that McDonald's loss of the ability to maintain her privacy rights was not a psychological or physical injury that is compensable under the Compensation Act. Likewise, the appellate court correctly held that a Privacy Act violation is not the type of injury that categorically fits within the purview of the Compensation Act and is thus not compensable under the Compensation Act. See generally *Toothman v. Hardee's Food Systems, Inc.*, 304 Ill. App. 3d 521, 533 (1999) (in order for injuries to be compensable under the Compensation Act, there must be some "demonstrable medical evidence of injury"); *Marino v. Arandell Corp.*, 1 F. Supp. 2d 947, 951 (E.D. Wis. 1998) ("workers' compensation acts *** were not designed to regulate or deter employer conduct, but to financially compensate injured employees and, specifically, to redress impaired earning capacity"). Accordingly, McDonald's Privacy Act claim for liquidated damages is not categorically within the purview of the Compensation Act.

¶ 45     Moreover, the plain language of the Privacy Act supports a conclusion that the legislature did not intend that the Privacy Act would be preempted by the Compensation Act. As a matter of legislative intent, later-enacted statutes control over earlier statutes, and more-specific statutes control over general acts. See *People ex rel. Madigan v. Burge*, 2014 IL 115635, ¶ 31 (in construing two conflicting statutes that cover the same subject, the specific governs the general and the more recently enacted statute should generally be given precedence). The

Privacy Act, which postdates the Compensation Act, defines the precollection "written release" required by the Compensation Act to include "a release executed by an employee as a condition of employment." 740 ILCS 14/10 (West 2016). Thus, the legislature was aware that Privacy Act claims could arise in the employment context, yet it treated them identically to nonemployee claims except as to permissible methods of obtaining consent. Therefore, the text of the Privacy Act itself, which mentions its application in the employment context, is further evidence that the legislature did not intend for Privacy Act claims to be presented to the Workers' Compensation Commission.

¶ 46     Bronzeville argues that such a construction means that Illinois employers would have greater protection against significant employee workplace injuries, whether physical, emotional, or mental, but no protection from workplace injuries stemming from technical violations of the Privacy Act. Bronzeville argues that, when workplace injuries can be cleverly characterized to evade the broad sweep of the exclusivity provisions, the proverbial litigation floodgates will open wide and the robust protections provided to Illinois employers will quickly erode.

¶ 47     *Amici* supporting Bronzeville's position likewise suggest that our decision stands to expose employers to potentially devastating class actions that can result in financial ruin. They suggest that allowing Privacy Act claims to proceed in court will expose employers in Illinois to a patchwork of varying results, especially given the rapidly evolving nature of Privacy Act case law.

¶ 48     We are cognizant of the substantial consequences the legislature intended as a result of Privacy Act violations. Pursuant to the Privacy Act, the General Assembly has adopted a strategy to limit the risks posed by the growing use of biometrics by businesses and the difficulty in providing meaningful recourse once a person's biometric identifiers or biometric information has been compromised. *Rosenbach*, 2019 IL 123186, ¶ 35; see also 740 ILCS 14/5(c) (West 2016) (once biometrics are compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions). The General Assembly has tried to head off such problems before they occur by imposing safeguards to ensure that the individuals' privacy rights in their biometric identifiers and biometric information are properly protected before they can be compromised and by subjecting private entities who fail to follow the statute's requirements to

substantial potential liability (740 ILCS 14/20 (West 2016)) whether or not actual damages, beyond violation of the law's provisions, can be shown. *Rosenbach*, 2019 123186, ¶ 36. "It is clear that the legislature intended for this provision to have substantial force." *Id.* ¶ 37.

> "When private entities face liability for failure to comply with the law's requirements without requiring affected individuals or customers to show some injury beyond violation of their statutory rights, those entities have the strongest possible incentive to conform to the law and prevent problems before they occur and cannot be undone." *Id.*

¶ 49 Ultimately, however, whether a different balance should be struck under the Privacy Act given the category of injury is a question more appropriately addressed to the legislature. See *Folta*, 2015 IL 118070, ¶ 43. "It is the province of the legislature to draw the appropriate balance." *Id.* "It is not our role to inject a compromise, but, rather, to interpret the acts as written." *Id.*; see also *Roselle Police Pension Board v. Village of Roselle*, 232 Ill. 2d 546, 557 (2009) (the supreme court does not "sit as a superlegislature to weigh the wisdom of legislation [or] to decide whether the policy which it expresses offends the public welfare" (internal quotation marks omitted)).

¶ 50 In sum, we conclude that McDonald may pursue her Privacy Act claims on her behalf and on behalf of the putative class in an action in the circuit court, rather than through a claim before the Workers' Compensation Commission, because McDonald's and the putative class's alleged injury is not one that "categorically fits within the purview of the [Compensation] Act." *Folta*, 2015 IL 118070, ¶ 23. Because the injury alleged is not the type of injury compensable in a workers' compensation proceeding, McDonald's lawsuit is not preempted by the exclusive-remedy provisions of the Compensation Act. Accordingly, we answer the certified question in the negative.

¶ 51                                III. CONCLUSION

¶ 52 For the foregoing reasons, we answer the certified question in the negative, affirm the judgment of the appellate court, and remand the cause to the circuit court

for further proceedings.

¶ 53    Certified question answered.

¶ 54    Judgments affirmed.

¶ 55    Cause remanded for further proceedings.

¶ 56    JUSTICE MICHAEL J. BURKE, specially concurring:

¶ 57    I agree with the majority that the injury as alleged is not compensable under the Compensation Act because, quite simply, there is no injury. Moreover, any risk of future injury is alleviated by the availability of permanent injunctive relief in the underlying action.

¶ 58    McDonald and the putative class have not suffered a physical, emotional, or financial injury. We know this because McDonald amended her complaint to remove any allegation that she suffered mental anguish from the purported violations of the Privacy Act. The operative, amended complaint sought recovery of liquidated damages, not any actual damages.

¶ 59    Had McDonald persisted in her allegation of mental anguish, the exclusivity provisions of the Compensation Act would have barred her claim. But by denying the existence of an injury, McDonald preserved her cause of action under the Privacy Act. This opportunity for gamesmanship in pleading highlights the incongruity of applying the Compensation Act's exclusivity provisions to Privacy Act claims that allege actual injuries but not to those that allege technical violations.

¶ 60    McDonald contends that her Privacy Act claim should proceed because she has suffered absolutely no injury, which is totally inconsistent with the concept that a technical violation of the Privacy Act is a "real and significant" injury. See *Rosenbach v. Six Flags Entertainment Corp.*, 2019 IL 123186, ¶ 34.